IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDALL HOUSEMAN,

    Plaintiff,                     No. 2:10-cv-01426 DAD P

    vs.

CHRISTOPHER SMITH, et al.,       ORDER AND

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's claim that defendants provided him with inadequate medical care in violation of his rights under the Eighth Amendment when they failed to provide him with the pain medication recommended by an outside physician and failed to authorize spinal surgery to treat his back injury. This matter is now before the court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Defendants' motion for summary judgment was filed and served on May 24, 2012. On July 27, 2010 and again on July 17, 2012, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). Defendants also

provided plaintiff their own Rand warning on July 26, 2012, the day before plaintiff filed his opposition to the pending motion.

### OTHER APPLICABLE LEGAL STANDARDS

I. **Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. **The Eighth Amendment and Claims of Inadequate Medical Care**

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

5

1  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at
2  105-06).  See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in
3  diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth
4  Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of
5  mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for
6  the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

7  Delays in providing medical care may manifest deliberate indifference.  Estelle,
8  429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in
9  providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d
10 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,
11 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.
12 Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]
13 prisoner need not show his harm was substantial; however, such would provide additional
14 support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett
15 v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

16 Finally, mere differences of opinion between a prisoner and prison medical staff
17 or between medical professionals as to the proper course of treatment for a given medical
18 condition do not give rise to a cognizable § 1983 claim.  Toguchi, 391 F.3d at 1058; Jackson v.
19 McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);
20 Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

22 This action is proceeding against five defendants.  Defendant Dr. J. Soltanian is a
23 physician and surgeon at Mule Creek State Prison (MCSP).  He examined and treated plaintiff on
24 several occasions from 2007 through 2009, and he denied plaintiff's inmate appeal regarding
25 medical care at the first level of review.  (Doc. No. 32-3, ¶ 29 at 5; Doc. No. 32-6 at 9.)
26 Defendant O. Akintola is a Physician's Assistant at MCSP and he also saw plaintiff several times

during the relevant time period. (Doc. No. 32-4 at 1.) Defendant Dr. C. Smith is the Chief Physician and Surgeon at MCSP and is also responsible for reviewing responses to inmate grievances involving health care. (Doc. No. 32-5 at 1.) Defendant T. Weinholdt was acting Health Care Manger when she denied plaintiff's inmate appeal regarding his medical care at the second level of review. (Doc. No. 32-6 at 2.) Defendant Weinholdt is not a physician or medical provider. (Id.) Defendant J. Walker was formerly the Chief of Prison Health Care Services, Office of Third Level Appeals - Health Care in 2010 and is now retired. (Doc. No. 32-7 at 1.) Defendant Weinholdt is also not a physician or medical provider. (Id.) He denied plaintiff's inmate appeal with respect to medical care at the third level of review. (Id. at 1-2.)

**I. Defendants' Statement of Undisputed Facts and Evidence**

Defendants' statement of undisputed facts is supported by citations to defendants' declarations[1] signed under penalty of perjury, plaintiff's medical records and plaintiff's administrative appeals. Those undisputed facts as established by this evidence are set forth below.

Plaintiff was housed at MCSP when he injured his lower back on November 27, 2007 while playing football on the MCSP yard. (Doc. No. 32-3 (Soltanian Decl.), ¶ 17 at 3.) At that time plaintiff was seen at the Triage and Treatment Area at MCSP and received anti-inflammatories, muscle relaxant and an injection of Toradol from prison medical staff. (Id., ¶18 at 4.) Plaintiff was also prescribed Gabapentin in response to his complaint of pain radiating down his right leg. (Id.)

Defendant Physician's Assistant Akintola ordered an x-ray of plaintiff's spine which was taken on December 11, 2007. (Id., ¶19 at 4.) The x-ray showed no abnormalities. (Doc. No. 32-1 at 11.)

---

[1] The court refers primarily to defendant Soltanian's declaration. The declarations provided by defendants Akintola and Smith set forth essentially the same information concerning the Department of Corrections and Rehabilitation guidelines for the provision of medical services as well as a summary of plaintiff's medical appointments, treatments and tests.

1   In February of 2008, Dr. Tseng ordered an MRI of plaintiff's lumbar spine which

2 was administered on April 4, 2008.  (Doc. No. 32-3, ¶ 21 at 4; Doc. No. 32-4 (Akintola Decl.), ¶

3 20 at 4.)  The MRI noted "mild facet degeneration . . . at the lower lumbar levels . . . . [s]mall

4 posterior annular bulges . . . . [and] small cystic structure[.]"  (Doc. No. 32-1 at 25; Doc. No. 32-

5 3, ¶ 21 at 4.)

6   On March 8, 2008, an EMG was performed and in late May of 2008, plaintiff met

7 with Physical Medicine and Rehabilitation specialist Dr. Henry.  (Id., ¶ 22 at 4.)  In his health

8 record report, Dr. Henry noted:

> His main complaint is pain level of 8/10.  He states his function is high.  However, he states "The pain is lighting his ass up."  Hence, I would recommend a series of epidural steroid injections or facet blocks and if he proves refractory[2] to these, surgical intervention for his synovial cysts.  He is agreeable to this and we will proceed.  In the meantime, he will continue with his anti-inflammatories and muscle relaxants, as well as Gabapentin.

(Doc. No. 32-1 at 24.)

14   In his declaration defendant Dr. Soltanian explains that "[a] synovial cyst is a

15 relatively uncommon cause of spinal stenosis in the lumbar spine; it is a benign condition, and

16 the symptoms and level of pain or discomfort may remain stable for many years."  (Doc. No. 32-

17 3, ¶ 21 at 4.)

18   Plaintiff received medical attention from defendants Dr. Soltanian and Physician's

19 Assistant Akintola on the following dates:  11/19/07, 12/4/07, 1/26/08, 2/15/08, 3/18/08, 8/11/08,

20 9/11/08, 10/28/08, 11/10/08, 12/2/08, 12/26/08, 2/9/09, 3/27/09, 4/13/09, 5/7/09, 6/12/09, 7/8/09,

21 and 7/30/09.  (Id., ¶ 29 at 5.)  Plaintiff "received medical attention in 2008, 2009, and 2010 from

22 Dr. Henry (Pain Management & Rehabilitation specialist), Dr. Pepper (Radiologist), D. White,

23 DPT, ECS (ABPTS Board Certified in Clinical EMG/NCS), Dr. Dumars (Radiologist), Dr.

24 Djukie (Radiologist), Dr. Bybee (Neurologist), Dr. Galloway, and Dr. Kleiger."  (Id., ¶30 at 5.)

---

[2] The court notes that "refractory" in this context means "stubborn or unmanageable," "not yielding to treatment."

1    Plaintiff "received steroid injections from Dr. Henry on August 13, 2008, January
2    14, 2009, and April 22, 2009." (Id., ¶ 31 at 5; Doc. 32-1 at 28, 37 & 43-44.) After the third of
3    these epidural injections, Dr. Henry noted both that a discography may be appropriate if the
4    symptoms persisted and that plaintiff had "exhausted conservative treatment[.]" (Doc. No. 32-1
5    at 44.)
6    Thereafter, on August 27, 2009, was sent out to be seen by Dr. Bybee at the Brain
7    and Spine Center in Modesto for an initial evaluation. (Doc. No. 32-3, ¶ 32 at 5-6.) On
8    September 9, 2009, Dr. Bybee requested authorization for a lumbar discogram and CT scan. (Id.,
9    ¶ 33 at 6.) On February 10, 2010, the discogram was performed. (Id., ¶ 35 at 6.) The report
10   from that procedure reflected "severe degenerative disc changes at L5-S1 and mid-to-moderate
11   disc disease at L4-5" but also noted the following:

> During the performance of this examination, the patient's symptoms were not reliably reproduced. He experienced little-to-no reproduction of clinical discomfort during intradiscal injection.

14   (Doc. No. 32-2 at 2; Doc. No. 32-3, ¶ 36 at 6.)
15   On July 16, 2010, during a medical appointment, Dr. Galloway observed that
16   plaintiff presented "[n]o apparent discomfort at all. Moves well." (Doc. No. 32-2 at 19.)
17   On May 12, 2009, plaintiff submitted an inmate appeal in which he alleged that on
18   March 17, 2009, spine specialist Dr. Henry prescribed Norco to be taken three times daily for
19   plaintiff's extreme pain. (Doc. No. 32-6 (Weinholdt Decl.) at 6.) Plaintiff further alleged in his
20   grievance that defendant Physician's Assistant Akintola refused to follow Dr. Henry's order and
21   instead gave plaintiff Tylenol 3 which did not alleviate his pain. (Id.) At the first level of
22   review, defendant Dr. Soltanian noted that plaintiff was seen by Dr. Henry on May 26, 2009, and
23   that plaintiff had a copy of a note "stating Norco three times a day as needed." (Id. at 9.)
24   However, defendant Dr. Soltanian determined that since Norco is not available at MCSP, he
25   would change "patient's Tylenol with Codeine to 1-2 tabs as needed three times a day." (Id.)
26   Defendant Dr. Soltanian also indicated that plaintiff would continue to receive follow-up medical

9

appointments as needed.  (Id.)  In his declaration Defendant Dr. Soltanian explains that Norco is a highly addictive narcotic that can be easily abused in the prison setting.  (Doc. No. 32-3 at 5.)  Defendant Weinholdt ultimately denied plaintiff's inmate appeal at the second level of review.  (Doc. No. 32-6 at 10-11.)  In 2010, defendant J. Walker was the Chief of Prison Health Care Services, Office of Third Level Appeals - Health Care, and responded to plaintiff's inmate appeal at the third level of review.  (Doc. No. 32-7 (Walker Decl.) at 1.)  Defendant Walker is not a physician or a medical provider and is now retired.  (Id.)  Defendant Walker represents that plaintiff's inmate appeal was denied at the third level of review because prison records indicated that the medical care plaintiff was receiving was adequate since plaintiff "received medical treatment, pain medication and additional diagnostic testing to address his concern."  (Id., ¶ 13 at 3; Doc. No. 32-7 at 6-7.)

**II. Defendants' Arguments**

Defendants argue that plaintiff cannot meet the objective prong for stating an Eighth Amendment claim because his allegations that his back condition required surgery and a prescription of Norco demonstrate a mere difference of opinion between plaintiff and prison medical staff.  (Doc. No. 31-1 at 8.)  Defendants conclude, "Even assuming, *arguendo*, that Defendants had been deliberately indifferent to Plaintiff, there is still no Eighth Amendment violation in this case, because Plaintiff did not have a serious medical need."  (Id. at 8-9.)

As to the subjective prong of plaintiff's inadequate medical care claim, defendants argue they were not deliberately indifferent to plaintiff's back condition and any resulting pain.  (Id. at 9.)  Defendants assert that the prescription records demonstrate that defendants Dr. Soltanian and Physician's Assistant Akintola increased the dosage of pain medications depending on plaintiff's complaints and that various anti-inflammatory and muscle relaxant medications were also prescribed for him.  (Id.)  Defendants argue that because pain is highly subjective, defendants Dr. Soltanian and Akintola properly "utilized their medical expertise, experience with inmate patients, personal observations of Plaintiff's high level of function in daily activities, and

10

comprehensive access to Plaintiff's medical history, in their dealings with Plaintiff." (Id.) Even considering the recommendations of Drs. Henry and Bybee, defendants argue there is no evidence before this court indicating that the defendants acted in a manner that was medically inappropriate or that they ignored plaintiff's complaints. (Id.) Defendants argue that there is also no evidence that they denied or delayed plaintiff's access to medical care and they note that it is undisputed that with respect to his back condition they provided frequent medical attention and pain medication to plaintiff, that plaintiff underwent multiple diagnostic tests and was seen by medical specialists. (Id. at 9-10.) Finally, defendants observe that there is no evidence that Drs. Henry or Bybee ever sought authorization for spinal surgery on plaintiff. (Id. at 10.)

Lastly, defendants Smith, Weinholdt and Walker argue that they are entitled to summary judgment because plaintiff's suit against them is based solely on their supervisorial positions and because they are also entitled to qualified immunity. (Id. at 10-11.)

**III.  Plaintiff's Opposition**

Plaintiff asserts that since suffering his football injury in October of 2007, he has experienced pain and that over time "the pain has gotton [sic] worse as plaintiff's condition has worsened because no corrective surgery has been performed." (Doc. No. 35 at 2.) Plaintiff also contends that he "has repeatedly informed the doctors and nurses that the pain medication prescribed for him, ie., Tylenol/codeine compound and gabapentin is not relieving his pain at all." (Id.) Plaintiff contends that by April of 2008, his pain had become worse and that he was purchasing Motrin to supplement his gabapentin prescription. (Id. at 5.) Plaintiff states that he had expected that surgery would be "promptly perform[ed]" to relieve his pain. (Id.)

According to plaintiff, when defendants Dr. Smith and Health Care Manager Weinholdt ruled on his inmate appeals they were able to review Dr. Henry's three surgery recommendations, Dr. Dumars' MRI report, medical records showing that plaintiff had received epidural injections and diagnostic reports showing severe lower spine degeneration and nerve damage. (Id.) Nonetheless, on July 2, 2009, they denied plaintiff's and Dr. Henry's request that

11

plaintiff receive surgery for his condition. (Id.)

Plaintiff states that he also filed an inmate appeal concerning defendant Physician's Assistant Akintola's refusal to provide him the Norco pain medication specifically prescribed by Dr. Henry. (Id.) Plaintiff notes that defendant Akintola substituted Tylenol 3 with codeine, which plaintiff contends is "a very weak analgesic" for the prescribed Norco. (Id. at 5-6.) Plaintiff argues that the pain medication prescription he was provided was insufficient and has resulted in him "living a nightmare of pain." (Id. at 6.)

## ANALYSIS

**I. Plaintiff's Serious Medical Condition**

As set forth above, to prevail on his Eighth Amendment claim that he was provided constitutionally inadequate medical care, plaintiff must prove that he suffers from a serious medical condition and that defendants responded to that condition with deliberate indifference. Defendants argue that plaintiff cannot establish that he has a serious medical condition, because plaintiff's allegations show only a difference of opinion as to his need for surgery and the Norco pain medication. (Doc. No. 31-1 at 8.) The court finds this contention by defendants to be completely misguided and unpersuasive.

A serious medical condition exists when the failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain. Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (noting that an indicia of a serious medical condition includes the existence of chronic or substantial pain); see also Pierce v. Skolnik, No. 3:10-cv-00239-ECR-VPC, 2012 WL 4482752 at *5 (D. Nev. July 18, 2012) (concluding that "[i]f plaintiff accurately describes his condition and experience of pain [from muscle spasms], his pain may rise to the level of chronic and substantial pain indicative of a serious medical condition . … [and] the court declines to grant summary judgment on the ground that plaintiff did not have a serious medical need, as plaintiff's level of pain and the extent of the impact of his condition remains open questions."). Here, the medical records before the court on

1   summary judgment indicate that plaintiff suffers from a back condition which causes him chronic
2   pain to some degree.  That condition obviously was one presenting a serious medical need.
3   Indeed, prison officials have implicitly acknowledged as much by regularly providing plaintiff
4   with medical treatment for his back condition over a number of years.  See McGuckin, 974 F.2d
5   at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important
6   and worthy of comment or treatment; the presence of medical condition that significantly affects
7   an individual's daily activities; or the existence of chronic and substantial pain are examples of
8   indications that a prisoner has a 'serious' need for medical treatment .") (citing Wood, 900 F.2d
9   at 1337-4 and Hunt, 865 F.2d at 200-01); Doty v. County of Lassen, 37 F.3d 540, 546 & n. 3 (9th
10  Cir. 1994) (same).

**II. Defendants' Response to Plaintiff's Serious Medical Condition**

The court next considers whether the evidence presented in connection with the pending summary judgment motion leaves open the possibility that a reasonable trier of fact could find based upon that evidence that defendants were deliberately indifferent to plaintiff's complaints of pain and his request that he be treated with surgery.

As to his complaints of back pain, plaintiff contends that by April of 2008, he was suffering substantial pain and that the Gabapentin medication provided by the defendants was not working.  The medical records indicate that around that same time period, plaintiff received an EMG and a MRI.  In May 2008, Dr. Henry, a pain management and rehabilitation specialist, reviewed those test results and recommended a series of epidural steroid injections, and if that procedure was "refractory . . .surgical intervention for . . . [the] synovial cysts." (Doc. No. 32-1 at 24.)  Dr. Henry also recommended that "[i]n the meantime, he [plaintiff] will continue with his anti-inflammatories and muscle relaxants, as well as Gabapentin." (Id.)  The evidence before the court also clearly establishes that plaintiff was receiving a variety of pain medications in 2008 and 2009, apparently in response to his complaints about increasing pain. (Doc. No. 32-1 at 27, 33-34, 39, 41, 49.)

Moreover, when plaintiff filed an inmate grievance seeking to obtain a prescription for the pain medication Norco, defendant Dr. Soltanian denied the request but did increase plaintiff's "Tylenol with Codeine to 1-2 tabs as needed three times a day." (Doc. No. 32-6 at 9.) Defendant Dr. Soltanian has also explained in his declaration that Norco is not an available or appropriate medication to prescribe to inmates because it is a narcotic which is highly addictive and easily abused in the prison setting. (Doc. No. 32-3 at 5.) The evidence of record shows that in treating plaintiff's pain, the defendants provided him with steroid injections, pain medication, muscle relaxants, follow-up medical appointments, and further diagnostic testing and evaluations in 2009 and 2010. That evidence also establishes that defendants repeatedly responded to plaintiff's complaints regarding pain through the administration of several different medications and treatments. Plaintiff essentially bases this aspect of his claim only on the fact that he was not provided Norco as suggested by Dr. Henry. The fact that defendant Dr. Soltanian declined to provide plaintiff with Norco and to instead substitute an increased dosage of Tylenol with codeine does not suggest that defendants were deliberately indifferent to plaintiff's serious medical condition. Rather, at most, it suggests a mere difference of opinion between medical professionals as to the proper course of treatment for plaintiff's medical condition which is insufficient to give rise to a cognizable § 1983 claim. See Hoang Minh Tran v. Haar, No. CV 10-07740 CJC (SS), 2012 WL 37506 at *3-4 (C.D. Cal. Jan. 9, 2012) (concluding that plaintiff's allegations that defendants refused to prescribe stronger and more effective medication for his pain reflects only a difference of medical opinion as to the necessary medication); Ruiz v. Akintola, No. CIV S-09-0318 JAM GGH P, 2010 WL 1006435, at *7 (E.D. Cal. Mar. 17, 2010) (summary judgment for defendants granted with respect to plaintiff's inadequate medical care claim where he presented no expert evidence that the Ultram he was prescribed by defendants, instead of the Norco that had been recommended by U.C. Davis physicians, was not medically warranted or reasonable), affirmed 457 Fed. Appx. 637 (9th Cir. Nov. 2, 2011); see also Toguchi, 391 F.3d at 1058 (changing the prescription ordered by another

physician is a mere difference of medical opinion insufficient to establish deliberate indifference); Hughes v. CDCR, No. 2:11-cv-1856 EFB P, 2012 WL 3276991, at *1-2 (Aug. 9, 2012) (plaintiff failed to state cognizable Eighth Amendment claim where he complained that defendants refused to prescribe him Wellbutrin as he requested but instead approved ten alternative medications to treat his depression).

  Therefore, plaintiff has failed to present evidence that defendants were deliberately indifferent to his medical condition, an essential element of his Eighth Amendment claim. Accordingly, summary judgment should be granted in favor of defendants with respect to plaintiff's claim that he received inadequate medical care as a result of the medication provided him for his back pain.

  Next, plaintiff claims that defendants Dr. Soltanian, Dr. Smith and Health Care Manager Weinholdt refused to follow Dr. Henry's three recommendations that plaintiff be treated surgically when they denied plaintiff's inmate appeals.[3] Upon review of plaintiff's medical records submitted in connection with the pending summary judgment motion, the court finds that although plaintiff refers to Dr. Henry recommending that he receive surgery on three occasions it appears that Dr. Henry merely mentioned the possibility of surgery for plaintiff if his condition did not improve with conservative treatment. In this regard and as noted above, in or around May of 2008, after plaintiff had received a MRI and an EMG, Dr. Henry merely reported that, "I would recommend a series of epidural steroid injections or facet blocks and if he

---

[3] In his opposition to the pending motion plaintiff contends: "[D]r. Smith and Dr. Weinholtd, in fact, after reading Dr. Henry's three surgery recommendations, Dr. Dumars's MRI report, and all three of Dr. Henry's injection and diagnostic reports, all diagnosing severe lower spine degeneration and nerve damage, denied Dr. Henry's request for surgery on July 2, 2009." (Doc. No. 35 at 5.) The evidence presented on summary judgment establishes the following. On June 12, 2009, defendant Dr. Soltanian denied plaintiff's inmate appeal at the first level of review. (Doc. No. 32-6 at 7 & 9.) Although the signature is difficult to read, it appears that defendant Dr. Smith also signed this first level decision as the Division Head and Chief Physician. (Doc No. 32-5 (Smith Decl.), ¶2 at 1 & Doc. No. 32-6 at 7.) On August 14, 2009, defendant Health Care Manager Weinholdt denied plaintiff's inmate appeal at the second level of review. (Doc. No. 32-6 at 10-11.)

[plaintiff] proves refractory to these, surgical intervention for his synovial cysts." (Doc. No. 32-1, Ex. A, part 1 at 24.) On April 22, 2009, Dr. Henry reported: "The patient **may be a candidate** for discography in the future if his symptoms persist." (Id., Ex. A at 44) (emphasis added).[4]

As also noted above, defendant Dr. Soltanian has explained in his declaration that a synovial cyst is "a relatively uncommon cause of spinal stenosis[5] in the lumbar spine[.]" (Doc. No. 32-3, ¶21 at 4.) Defendant Dr. Soltanian contends that surgery for plaintiff's condition was recommended by Dr. Henry merely on a "'to be discussed as necessary' basis" and that the specialists made no indication that immediate surgery was necessary. (Id., ¶ 39 at 6.) Upon review of the medical records before the court on summary judgment, the court agrees with defendants that Dr. Henry's comment regarding possible surgical intervention to treat plaintiff's condition was not a recommendation that plaintiff be scheduled for surgery at that time. Rather, surgical treatment was suggested by Dr. Henry only should other more conservative treatment efforts to relieve plaintiff's pain prove to be unsuccessful.

Moreover, after plaintiff received his final steroid injection on April 22, 2009, he continued to be evaluated by medical staff but their findings were inconclusive. For instance, the discogram procedure conducted on February 10, 2010, was unable to reproduce plaintiff's symptoms of pain and discomfort. At plaintiff's July 16, 2010 appointment, Dr. Galloway observed that plaintiff did not appear to be in any obvious discomfort but instead was moving well.

---

[4] Similarly, on March 16, 2010, Dr. Bybee reported that he would possibly review additional views of plaintiff's CT scan and would have plaintiff "return for discussion of surgery **if indicated** after reviewing the films." (Doc. No. 32-1, Ex. A, part 2 at 7, 18) (emphasis added).

[5] "Lumbar stenosis (spinal stenosis) is a condition whereby either the spinal canal (central stenosis) or one or more of the vertebral foramina (foraminal stenosis) becomes narrowed. If the narrowing is substantial, it causes compression of the nerves, which causes the painful symptoms of lumbar spinal stenosis, including low back pain, buttock pain, and leg pain and numbness that is made worse with walking and relieved by resting." Lumbar Spinal Stenosis, "What is the lumbar spine, and what is lumbar spinal stenosis?" MedicineNet.com (Jan. 14, 2013), available at http://www.medicinenet.com/lumbar_stenosis/article.htm.

The evidence before the court on summary judgment establishes that one physician had recommended that if plaintiff's pain did not yield to steroid injection, surgical treatment in his opinion would be in order. However, the evidence also establishes that following his final steroid injection on April 22, 2009, plaintiff continued to be followed and treated by medical staff and that by the time of plaintiff's February 10, 2010 discogram another outside consulting physician, Dr. Bybee, reported that although diagnostic testing reflected severe degenerative disc changes and mid-to-moderate disc disease that plaintiff's pain symptoms could not be reliably reproduced and plaintiff exhibited little-to-no discomfort. Moreover, it was reported by Dr. Galloway on July 16, 2010, that upon examination plaintiff presented on that date suffering from no apparent discomfort at all and was moving well. Thus, it appears that the epidural steroid injection treatments coupled with the pain management medication provided to plaintiff was proving to be at least somewhat successful in treating his back condition to the extent that a conservative course of ongoing treatment not involving surgery was medically reasonable. On this point, plaintiff has failed to establish that there was even a difference of opinion among physicians as to the appropriate course of treatment.[6]

In light of this undisputed evidence, defendants are entitled to summary judgment in their favor with respect to plaintiff's claim that his Eighth Amendment rights were violated by the defendants' failure to approve him for surgical treatment. For the same reason, defendants Dr. Soltanian, Dr. Smith and Health Care Manager Weinholdt are entitled to summary judgment in their favor on plaintiff's claim that they were deliberately indifferent to his serious medical needs when they reviewed and denied his inmate grievances complaining about the medical treatment he was receiving.[7]

---

[6] Of course, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin, 662 F.2d at 1344.

[7] The court notes that it appears that plaintiff's inmate appeals primarily concerned his claim that he should be prescribed Norco. Of course, because the existence of an inmate appeals

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign this case to a District Judge.

Also, IT IS HEREBY RECOMMENDED that:

1. The May 24, 2012 motion for summary judgment (Doc. No. 31) filed on behalf of defendants Dr. Soltanian, Health Care Manager Weinholdt, Chief of Prison Health Care Services Walker, Physician's Assistant Akintola and Dr. Smith be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 24, 2013.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
hous1426.msj

---

process does not create a protected liberty interest plaintiff cannot base a cognizable claim on the fact that he was denied a particular result. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Here, the court has interpreted plaintiff's complaint as alleging instead that his inmate appeals put the defendants involved in that administrative process on notice that his serious medical needs were not being met and that their denial of those grievances therefore constituted deliberate indifference to those needs. See Womack v. Bakewell, No. CIV S-10-2778 DAD P, 2011 WL 6260657, at *8 (E.D. Cal. Sec. 15, 2011) (and cases cited therein). Finally, in light of the analysis and recommendation set forth above the court need not address the argument advanced on behalf of defendants Dr. Smith, Health Care Manager Weinholdt and Chief of Prison Health Care Services Walker that those defendants are entitled to summary judgment on qualified immunity grounds.